# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

| | |
|---|---|
| SHERRY HERNANDEZ,<br>  Plaintiff, | Case No. 1:20-cv-541<br>Litkovitz, M.J |
| vs. | |
| COMMISSIONER OF<br>SOCIAL SECURITY,<br>  Defendant. | ORDER |

Plaintiff Sherry Hernandez brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for supplemental security income (SSI). This matter is before the Court on plaintiff's Statement of Errors (Doc. 14), the Commissioner's response in opposition (Doc. 19), and plaintiff's reply (Doc. 20).

## I. Procedural Background

Plaintiff protectively filed her application for SSI in February 2017, alleging disability since October 1, 1996,[1] due to lower back problems, osteoarthritis, and lack of cartilage in her knees. The application was denied initially and upon reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Renita Bivins. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing on February 14, 2019. On May 1, 2019, the ALJ issued a decision denying plaintiff's SSI application. This decision became the final decision of the Commissioner when the Appeals Council denied review on May 14, 2020.

---

[1] Plaintiff amended her alleged onset date of disability to March 6, 2017. (Tr. 173).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

**B. The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since March 6, 2017, the amended alleged onset date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: knee osteoarthritis, degenerative disc disease, diabetes mellitus with neuropathic pain, morbid obesity, depressive, bipolar, and related disorder, obstructive sleep apnea (20 CFR 416.920(c)).
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, [the ALJ] finds that [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 416.967(a) except she can lift/carry 20 pounds occasionally and 10 pounds frequently and is able to stand and/or walk for 2 hours per 8 hour day and sit for 6 hours per 8 hour day with normal breaks. She can occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. She can occasionally balance and stoop, never kneel, occasionally crouch, and never crawl. She can perform occasional operation of foot controls bilaterally. She must avoid concentrated exposure to extreme cold, extreme heat, humidity, and hazards such as dangerous unshielded machinery. She must avoid all exposure to unprotected

heights. She is able to understand, remember and carry out simple, repetitive instructions with no fast pace production quota. She can maintain sufficient attention and concentration and sustain persistence and pace to complete simple tasks that are not fast-paced with no strict production quotas. She can adapt to infrequent changes in a static work setting.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] was born [in] . . . 1972 and was 44 years old, which is defined as a younger individual age 18-44, on the date the application was filed. [Plaintiff] subsequently changed age category to a younger individual age 45-49 (20 CFR 416.963).

7. [Plaintiff] has a limited education and is able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 416.969 and 416.969a).[2]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since March 6, 2017, the amended alleged onset date (20 CFR 416.920(g)).

(Tr. 17-28).

**C. Judicial Standard of Review**

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v.*

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative sedentary, unskilled occupations such as bus monitor (23,000 jobs in the national economy), routing clerk (71,000 jobs in the national economy), weights measures checker clerk (45,000 jobs in the national economy), order clerk (38,000 jobs in the national economy), call out operator (23,000 jobs in the national economy), and coupon counter scanner (91,000 jobs in the national economy). (Tr. 27, 67).

*Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.,* 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers,* 582 F.3d at 651 (quoting *Bowen,* 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

## D. Specific Errors[3]

On appeal, plaintiff presents three assignments of error: (1) the ALJ erred by failing to consider plaintiff's obesity-hypoventilation syndrome[4] as an impairment—severe or otherwise; (2) the ALJ erred at step three of the sequential evaluation by failing to analyze whether plaintiff's physical impairment met or equaled Listing 3.02C(2) for chronic pulmonary insufficiency, *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02C; and (3) the ALJ erred in assigning only "little to some weight" as opposed to controlling weight to the opinion of plaintiff's treating physician Dr. Kathleen Lang, M.D. (Tr. 25).

### 1. Obesity-hypoventilation syndrome

Plaintiff argues that the ALJ failed to consider plaintiff's obesity-hypoventilation syndrome as an impairment, severe or otherwise, in formulating plaintiff's residual functional capacity. The Commissioner first argues that the ALJ's failure to find that plaintiff's obesity-hypoventilation syndrome was a severe impairment was harmless error (if error at all), where the ALJ found that plaintiff suffered from other severe impairments and continued with the sequential evaluation process. The Commissioner next points to (1) the lack of evidence in the record tying this condition to any functional limitations, and (2) the evidence showing that plaintiff did not seek treatment for the condition between 2012 and 2018 and was non-compliant with associated treatment recommendations thereafter. According to the Commissioner, both

---

[3] Plaintiff's arguments concern the ALJ's evaluation of her physical impairments; therefore, plaintiff has waived any challenges regarding her mental impairments. *See Kuhn v. Washtenaw Cty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived.") (citation omitted).

[4] The Commissioner notes that plaintiff and portions of the record at times refer to this condition as chronic hypoxemic respiratory failure and that the two labels appear interchangeable (*see* Doc. 19 at PAGEID 2214 n.2). Plaintiff does not disagree in her reply.

suggest that the ALJ's residual functional capacity determination—even if it did not include consideration of obesity-hypoventilation syndrome—would not have changed with explicit consideration thereof. In reply, plaintiff disagrees that any such error is harmless and points to the fact that the ALJ specifically referenced two other non-severe conditions while omitting reference to plaintiff's obesity-hypoventilation syndrome at step two of her analysis.

The regulations define a "severe" impairment or combination of impairments as one that significantly limits the physical or mental ability to perform basic work activities. 20 C.F.R. § 416.920(c). Basic work activities relate to the abilities and aptitudes necessary to perform most jobs, such as the ability to perform physical functions and the mental abilities to use judgment, respond to supervisors, and deal with changes in the work setting. 20 C.F.R. § 416.922(b). An impairment is considered "severe" unless "the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities." SSR 85-28, 1985 WL 56856, at *3. "The mere diagnosis of an impairment does not indicate the severity of the condition nor the limitations, if any, that it imposes." *Stevenson v. Astrue*, No. 3:10-cv-442, 2011 WL 7561883, at *5 (S.D. Ohio Aug. 1, 2011), *report and recommendation adopted*, 2012 WL 936754 (S.D. Ohio Mar. 20, 2012).

The claimant's burden of establishing a "severe" impairment at step two is "*de minimis*." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 325 (6th Cir. 2015) (citing *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir. 1988)). "[A]n impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Id*. (quoting *Higgs*, 880 F.2d at 862).

Once "an ALJ determines that one or more impairments is severe, the ALJ must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not severe." *Singleton v. Comm'r of Soc. Sec.*, 137 F. Supp. 3d 1028, 1033 (S.D. Ohio 2015) (quoting *Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (citing SSR 96-8P, 1996 WL 374184, at *5 (July 2, 1996))) (internal quotation marks omitted). Where the ALJ finds at least one severe impairment, the ALJ's failure to find additional severe impairments at step two is not reversible error where the ALJ considers the claimant's impairments—both severe and non-severe—in the remaining steps of the disability determination. *Maziarz v. Sec'y of H.H.S.*, 837 F.2d 240, 244 (6th Cir. 1987); *see also Fisk*, 253 F. App'x at 583. "So long as the ALJ finds at least one severe impairment and analyzes all impairments in the following steps, the characterization of other impairments as severe or non-severe is 'legally irrelevant.'" *Deaner v. Commr. of Soc. Sec.*, 840 F. App'x 813, 817 (quoting *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)). This rule acknowledges that an ALJ "properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [her] to perform substantial gainful activity." *Winn*, 615 F. App'x at 326 (quoting *Maziarz,* 837 F.2d at 244).

The ALJ here found that plaintiff has the "severe" impairments of knee osteoarthritis; degenerative disc disease; diabetes mellitus with neuropathic pain; morbid obesity; depressive, bipolar, and related disorder; and obstructive sleep apnea. (Tr. 17). The ALJ also addressed plaintiff's non severe impairments:

> [Plaintiff] also has the following nonsevere impairments: restless leg syndrome, hypothryroidism. These impairments are nonsevere because they do not

8

> significantly limit [plaintiff's] ability to perform basic work activities. Though
> they are nonsevere, these impairments were still considered in determining the
> claimant's residual functional capacity.

(Tr. 17). The ALJ made no finding whether plaintiff's obesity-hypoventilation syndrome is a severe or nonsevere impairment. The ALJ did, however, make reference to this impairment in her discussion of the treating physician's opinion. The question, therefore, is whether the ALJ's later reference to obesity-hypoventilation syndrome in her discussion of treating physician Lang's opinion (*see* Tr. 25) demonstrates that she considered this impairment in her assessment of plaintiff's residual functional capacity, notwithstanding her failure to specifically reference the condition when she listed plaintiff's two other non-severe impairments (*see* Tr. 17). *Cf. Winn*, 615 F. App'x at 326 (finding reversible error where the ALJ found severe impairments, but did not consider plaintiff's non-severe mental impairments "in a meaningful way" in the balance of the sequential analysis).

Plaintiff was first diagnosed with acute respiratory failure in August 2012 following an arthroscopic knee surgery. (Tr. 1196-1209). Plaintiff was not able to maintain her oxygen saturation (Tr. 1196) and transferred to the hospital's intensive care unit (Tr. 1205). Upon discharge, plaintiff was assessed with "acute hypoxemic respiratory failure. Likely multifactorial from [central nervous system] depressing medications, obesity-hypoventilation syndrome. . . . Likely some component of chronic $CO_2$ retention given [arterial blood gases] findings." (Tr. 1209). Plaintiff was also diagnosed with super-morbid obesity. (*Id.*).

There is no record of treatment for this condition until October 2018, when plaintiff consulted with Dr. Lang to establish care. (Tr. 1973-78). Dr. Lang noted plaintiff's history of

9

respiratory failure and how "she was lost to follow-up and not using [BiPAP]." (Tr. 1973). She referenced plaintiff's history of obstructive sleep apnea, COPD, and respiratory failure following her 2012 knee surgery (*id.*), and commented (in connection with anxiety medications) that "the risk of respiratory failure and death is very high with this [patient]." (Tr. 1974). Dr. Lang assessed plaintiff with "chronic respiratory failure with hypoxia and hypercapnia (HCC)" and referred plaintiff for venous blood gas studies. (Tr. 1978). The latter were performed in November 2018 and showed $PCO_2$ at 55 and $PO_2$ at 45. (Tr. 2011). Dr. Lang noted that "[h]igh CO2 and low oxygen content on [plaintiff's] venous blood gas and [history] o[f] chronic respiratory failure after knee surgery in past makes controlling this issue imperative." (Tr. 2010). At a follow-up appointment the next month, Dr. Lang again noted that plaintiff had "severe [obstructive sleep apnea]" and "severe hypoxia. . . ." (Tr. 2043).

In January 2019, plaintiff underwent a sleep study with pulmonary disease specialist Oluwole Onadeko, M.D. (Tr. 2064-70). Dr. Onadeko assessed plaintiff with obstructive sleep apnea, noting that it was possibly related to concomitant obesity-hypoventilation syndrome. (Tr. 2069). Dr. Onadeko recommended BiPAP, aggressive weight loss (recommending a Mercy Fairfield Weight Loss program), daily exercise, limited use of sedatives and opiates (which might worsen the issues associated with her sleep disorder), and a regular sleep-wake cycle with no daytime naps. (*Id.*). A January 8, 2019 arterial blood gas study showed $PCO_2$ at 48 and $PO_2$ at 82. (Tr. 2072).

On February 5, 2019, Dr. Lang completed a "Medical Assessment of Ability to Do Work Related Activities (Physical)." (Tr. 2103-2108). Dr. Lang identified several medical conditions

for which she treated plaintiff, including chronic hypoxemic respiratory failure with hypercapnia, Pickwickian syndrome with morbid obesity, and obstructive sleep apnea. (Tr. 2103). She identified environmental restrictions associated with these impairments that included heights, moving machinery, temperature extremes, chemicals, dust, and humidity; and she noted that plaintiff's "COPD—severe with hypoxic, hypercapnic resp. failure" supported her assessment. (Tr. 2106-07). Dr. Lang noted that exposure to chemicals and dust could result in "nausea, airway irritation with fumes, smoke, etc." (Tr. 2107).

The Court finds that the ALJ erred by not assessing plaintiff's obesity-hypoventilation syndrome. It is well-settled that the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact. *See Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988) ("The mere fact that plaintiff suffered from a [condition] . . . does not automatically entitle plaintiff to the receipt of benefits. Rather, . . . plaintiff must show that she was disabled by her [condition]."). Dr. Lang's February 2019 opinion, however, includes environmental restrictions on chemicals and dust that are associated with plaintiff's pulmonary issues (including her obesity-hypoventilation syndrome) that are not included in the ALJ's residual functional capacity determination. (*See* Tr. 2107; Tr. 20). The ALJ provides no rationale for why these particular environmental restrictions associated with plaintiff's obesity-hypoventilation syndrome were omitted and others were not.[5] This omission, coupled with the ALJ's failure to specifically identify plaintiff's obesity-hypoventilation syndrome as a non-severe impairment (*see* Tr. 17), compel the Court to conclude that the ALJ did not consider this

---

[5] Consistent with Dr. Lang's assessment, the ALJ included restrictions on concentrated exposure to extreme cold, extreme heat, humidity, and heights in her RFC assessment. (Tr. 20, 2106-07).

impairment in the balance of her sequential evaluation. "[S]uch an error merits reversal." *Singleton*, 137 F. Supp. 3d at 1034 (citing *Johnson v. Colvin*, No. 3:13-cv-301, 2014 WL 6603376, at *8 (S.D. Ohio Nov. 19, 2014), *report and recommendation adopted*, 2014 WL 7015188 (S.D. Ohio Dec. 10, 2014)); *see also Berryhill v. Shalala*, No. 92-5876, 4 F.3d 993, 1993 WL 361792, at *7 (6th Cir. Sept. 16, 1993) (quoting *Kurzon v. United States Postal Serv.*, 539 F.2d 788, 796 (1st Cir. 1976)) (internal quotation marks omitted) ("Where a subsidiary finding is unfounded, the court will remand the case to the agency for further consideration . . . if the court is in substantial doubt whether the administrative agency would have made the same ultimate finding with the erroneous finding removed from the picture. . . ."). Plaintiff's first assignment of error is sustained.

2. Listing 3.02C(2)

Listing 3.02 governs chronic respiratory disorders due to any cause except cystic fibrosis. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02. Listing 3.02C, which specifically addresses chronic impairment of gas exchange, sets forth three methods by which a claimant might demonstrate the impairment. At issue in this case is method two, which requires an arterial $PaCO_2$ measurement of 40 or above and an arterial $PaO_2$ measurement of less than or equal to 55 for test sites less than 3,000 feet above sea level.[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 3.02C(2).

Plaintiff argues that the ALJ failed to consider Listing 3.02 at all, even though plaintiff briefed this particular Listing at the administrative level. (*See* Tr. 237). She points to the

---

[6] Both readings are measured in "mm Hg," or "a unit of pressure equal to the pressure exerted by a column of mercury 1 millimeter high at 0°C and under the acceleration of gravity and nearly equivalent to 1 torr (about 133.33 pascals)." https://www.merriam-webster.com/medical/mm%20Hg (last visited June 16, 2021).

blood gas test performed on November 13, 2018 as demonstrating the required Listing level severity for Listing 3.02C(2), which recorded $PCO_2$ of 55 and $PO_2$ of 45. (Tr. 2011). The Commissioner argues in response that the relied upon blood gas results give vascular values as opposed to the arterial values articulated in the regulations, which are not interchangeable and therefore do not satisfy Listing 3.02C(2)'s criteria. In reply, plaintiff argues that even if the blood gas test results do not exactly match the Listing's requirements, the ALJ's complete lack of consideration of this Listing does not allow for meaningful judicial review of whether the ALJ determined whether plaintiff met or medically equaled the Listing.

Plaintiff bears the burden of proving that her impairments meet or equal a listed impairment. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003) (the claimant bears the burden of establishing steps one through four). To meet this burden, plaintiff must put forth evidence establishing that she meets all of a Listing's criteria. *See Elam ex rel. Golay v. Comm'r of Soc. Sec.*, 348 F.3d 124, 125 (6th Cir. 2003) (citing 20 C.F.R. § 416.924(a); *Hale v. Sec'y of H.H.S.*, 816 F.2d 1078, 1083 (6th Cir. 1987)). Plaintiff may also demonstrate disability by establishing that her "impairments are equivalent to a listed impairment by presenting 'medical findings equal in severity to *all* the criteria for the one most similar listed impairment.'" *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001) (quoting *Sullivan v. Zebley*, 493 U.S. 521, 531, (1990)). Regardless, "[t]his decision must be based solely on medical evidence supported by acceptable clinical and diagnostic techniques." *Land v. Sec'y of H.H.S.*, 814 F.2d 241, 245 (6th Cir. 1986) (citing 20 C.F.R. § 404.1526(b)).

On the other hand, in *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411 (6th Cir. 2011), the Sixth Circuit held that ALJs are required "to actually evaluate the evidence, compare it to . . . the Listing, and give an explained conclusion, in order to facilitate meaningful judicial review. Without it, it is impossible to say that [an] ALJ's decision at step three was supported by substantial evidence." *Id.* at 416.

The Commissioner downplays *Reynolds*, citing two subsequent Sixth Circuit decisions suggesting that the *Reynolds* holding is narrower than alleged by plaintiff. The Commissioner first cites *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470 (6th Cir. 2012) (per curiam), in which the court found no error where the ALJ failed to make specific findings on a particular Listing. *Id.* at 472. In *Malone*, however, the claimant was represented by counsel at the administrative level and *did not* argue that he had a particular listed impairment. *Id.* In addition, the *Malone* decision does not address *Reynolds*.

The Commissioner next cites *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359 (6th Cir. 2014), in which the court did acknowledge *Reynolds* and nevertheless declined to require remand "when [an] ALJ provides minimal reasoning at step three of the five-step inquiry. . . ." *Id.* at 365. Like in *Malone*, the *Forrest* court considered a case in which the claimant had not raised the Listing issue below—as contrasted with plaintiff here. *See id.* (emphasis added) (remand unnecessary "*especially* where [the claimant] did not argue at the hearing that he met a particular listing"). But unlike in *Malone*, the *Forrest* court provided two bases upon which to limit the holding in *Reynolds*. First, the *Forrest* court distinguished between the level of specificity demanded by the requirement that an ALJ "consider" the evidence in a case record at step three

14

and the requirement that an ALJ give "good reasons" for the weight assigned to a treating physician. *Id.* *Compare* 20 C.F.R. § 416.920(a)(4)(iii) ("At the third step, we . . . consider the medical severity of your impairment(s).") *with* 20 C.F.R. § 416.927(c)(2) ("We will always give good reasons in our . . . decision for the weight we give your treating source's medical opinion."). Second, the *Forrest* court noted that the *Reynolds* court appeared to base its decision, at least in part, on the fact that the record reflected some evidence upon which the claimant could have met the Listing. *See Reynolds*, 424 F. App'x at 416 ("[C]orrection of [the ALJ's failure to specifically address step three Listing determination] is not merely a formalistic matter of procedure, for it is possible that the evidence [the claimant] put forth could meet this listing.").

The Court finds that remand is appropriate in this case. Unlike in *Malone* and *Forrest*, plaintiff specifically raised Listing 3.02C(2) and put forth plaintiff's test results that arguably met or medically equaled the requirements of Listing 3.02C—notwithstanding the arterial versus vascular measurement issue raised by the Commissioner. Under these circumstances, the ALJ's complete failure to address Listing 3.02C in her written decision deprives this Court of a means by which to meaningfully review her step three conclusion. *See Reynolds*, 424 F. App'x at 416. Plaintiff's second assignment of error is sustained.

    3. <u>Weight assigned to Dr. Lang's opinion</u>

The Court need not address plaintiff's final assignment of error. The Court has determined that remand is appropriate with respect to whether plaintiff's obesity-hypoventilation syndrome is a severe impairment and whether plaintiff meets or medically equals Listing

3.02C(2). On remand, the ALJ will therefore be required to re-evaluate the weight assigned to plaintiff's treating physician during the balance of the sequential evaluation.[7]

**III. This matter will be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the Court notes that all essential factual issues have not been resolved in this matter, nor does the current record adequately establish plaintiff's entitlement to benefits as of her alleged onset date. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should therefore be remanded for further proceedings. On remand, the ALJ should elicit further medical and vocational evidence as warranted; reevaluate the evidence and reconsider whether plaintiff's obesity-hypoventilation syndrome is a severe impairment and whether plaintiff's impairments meet or equal Listing 3.02C(2); and reweigh the medical opinion evidence.

**IT IS THEREFORE ORDERED** that the decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings pursuant to Sentence Four of 42 U.S.C. § 405(g).

Date: 7/7/2021

Karen L. Litkovitz
United States Magistrate Judge

---

[7] Even if the Court were to determine that the ALJ's assessment of Dr. Lang's opinion is not supported by substantial evidence, the Court would nonetheless remand this case for further proceedings for the reasons set forth in Section III.